UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X

IGNACIO REYES DE LOS SANTOS, et al.,

                                        Plaintiffs,

                    -against-

MARTE CONSTRUCTION, INC., et al.,

                                        Defendants.

--------------------------------------------------------------X

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:_____     │
│ DATE FILED:__11/25/2020_____     │
└──────────────────────────────────┘
```

**REPORT & RECOMMENDATION**
**FOLLOWING DAMAGES INQUEST**

**18-CV-10748 (PAE) (KHP)**

TO:      **HON. PAUL A. ENGELMAYER, United States District Judge**
FROM:  **KATHARINE H. PARKER, United States Magistrate Judge**

         Plaintiffs Ignacio Reyes de los Santos ("I.R. de los Santos), Benito Cantu, Baltazar Reyes

Librado, Elvis Martinez, Andy Verdin, and Amador Cantu de los Santos ("A.C. de los Santos", and

collectively, "Plaintiffs") commenced this action against their employers, Defendants Marte

Construction Inc. ("MCI"); Joseph M. Marte; and Jesus Olaya, Robert Star Plumbing and

Heating, Corp. ("RSP"); O.K. Electrical Service Corporation ("OKE"); and Doval Plumbing and

Heating Corporation ("DPH", and collectively, "Defendants"[1]), under the Fair Labor Standards

Act of 1938 ("FLSA") and N.Y. Labor Law ("NYLL") §§ 190 *et seq*. and §§ 650 *et seq*. for unpaid

regular and overtime wages, spread of hours pay, actual and liquidated damages, statutory

damages, failure to provide notice and periodic wage statements, pre-judgment interest, post-

judgment interest, and attorneys' fees and costs.

---

[1] Plaintiffs subsequently withdrew their claim against Robert Star Plumbing and Heating, Corp.  Accordingly, the Court's use of Defendants herein does not include this entity.  (ECF No. 98.)

Despite Plaintiffs' proper service of summons and the complaints on all Defendants, Defendants Robert Star Plumbing and Heating, Corp., O.K. Electrical Service Corporation, and Doval Plumbing and Heating Corporation failed to make appearances.  Additionally, while initially appearing with counsel, Defendants Marte Construction, Joseph Marte, and Jesus Olaya, after their counsel's withdrawal, failed to comply with Court ordered discovery and conferences.  This led the undersigned to direct Plaintiffs to move for default judgment for failure to participate in this action.  Plaintiffs moved for default judgment against all Defendants on December 20, 2019.  (ECF Nos. 77-78.)  The Honorable Paul A. Engelmayer granted that motion on June 9, 2020.  (ECF No. 91.)  Judge Engelmayer then referred this matter to me for a damages inquest following entry of default judgment.  Plaintiffs' seek their unpaid overtime premium (i.e., the additional half-time rate) for 20 hours of overtime worked each week during their employment, liquidated damages, statutory damages for failure to comply with New York's wage notice requirements, and their attorneys' fees and costs.  For the reasons set forth below, I recommend that Plaintiffs be awarded actual and liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs, as discussed below.

## BACKGROUND[2]

### A.  Factual Background

Plaintiffs are all adult individuals residing in the Bronx.  (Am. Compl. at ¶ 5, Ex. B to the Decl. of Mohammed Gangat, ECF No. 79-2.)  Plaintiffs each worked as general laborers,

---

[2] Because Judge Engelmayer has already held Defendants to be in default, Plaintiffs' allegations in the Amended Complaint, with the exception of those related to damages, are accepted as true and all reasonable inferences are drawn in Plaintiffs' favor.  *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).

performing demolition, carpentry, plumbing, and electrical work at residential buildings while employed by Defendants.  (Am. Compl. ¶24; *see also* Pls. Affs. at ¶ 2.2, Exs. H-M to Gangat Decl, ECF Nos. 74-8-74-13.)  Each Plaintiff's employment ended on or about October 18, 2018; the start date of Plaintiffs' employments were as follows:  Verdin in or about November 2016; I.R. de los Santos in or about February 2017; A.C. de los Santos in or about April 2017; Martinez from in or about June 2017; Cantu from in or about June 2017, 2018; Librado in or about June 2018.  (Pls. Affs. ¶2.)

Plaintiffs were hired by Individual Defendant Joseph Marte. (Am. Compl. ¶24; Pls. Affs. ¶ 3.)  Marte, together with Individual Defendant Jesus Olaya, exercised significant control over each Plaintiff's employment, including the power to fire employees, determine rate of pay, determine hours, and supervise and direct the manner of the work performed.  (Am. Compl. ¶ 12; Pls. Affs. ¶ 3.)  Messrs. Marte and Olaya participated in the day to day operations of each of the corporate Defendants:  MCI, RSP, OKE and DPH.  (Am. Compl. ¶ 10.)  Each corporate Defendant offers services to the public in the general contracting and construction industry. (*Id.* ¶ 11.)  Under the control of the Individual Defendants, the corporate Defendants secured contracts and necessary licensing and permitting for the performance of construction services at jobsites throughout New York City.  (Am. Compl. ¶ 4-5; Pls. Affs. ¶ 4.)  To perform the construction services, the corporate Defendants utilized Plaintiffs as employees.  (Am. Compl. ¶ 4-5; Pls. Affs. ¶ 4-5.)  Each corporate Defendant had the authority to fire each Plaintiff and supervise and direct the manner of each Plaintiff's work.  (Pls. Affs. ¶5.)  The Defendants were engaged in interstate commerce within the meaning of the FLSA and earned in excess of $500,000 annually.  (Am. Compl. ¶ 32-34; Pls. Affs. ¶ 8-9.)

During the employment, Plaintiffs worked in excess of 40 hours per week without being paid overtime wages. (Am. Compl. ¶ 24-26.) During their employment, Plaintiffs worked approximately 60 hours per week, each week working the same schedule, 6 days per week, 10 hours per day. (Pls. Affs. ¶ 10.) Plaintiffs recall working continuously throughout their respective employment period and do not recall many days off during the employment period. (*Id*. ¶¶ 2, 11.) Plaintiffs were paid daily rates between $120 and $155. (*Id.* ¶ 12.) Defendants never told Plaintiffs whether the daily rate was intended to account for and pay the proper overtime premium, and no agreement existed between Plaintiffs and Defendants as to whether the day rate accounted for an overtime premium. (*Id.* ¶ 13.)

Defendants never provided any Plaintiff either at the time of hiring or at any point thereafter with a written notice setting forth his pay rate, any allowances such as for meals, the regular payday, the name of the employer, any "doing business as" names used by the employer, the physical and mailing address of the employer's main office or principal place of business, or the employer's telephone number. (Am. Compl. ¶ 58; Pls. Affs. ¶ 14.) Defendants also never provided any Plaintiff with wage statements for any pay period that included the dates of work that the wages covered or other legally required information.

## DISCUSSION

A defendant's default is an admission of the plaintiffs' well-pleaded allegations, except as they relate to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Thus, although Defendants have already defaulted, a substantive analysis of the claims alleged against Defendants is required. Below, I address first whether Defendants are liable to Plaintiffs as employers under the FLSA and NYLL. Second, I will discuss

the appropriate measure of damages, fees, and costs, if any, that may be awarded to Plaintiffs.

**A.** **Employer Liability Under the FLSA and NYLL**

### 1.  Statute of Limitations under the FLSA and NYLL

Claims brought under the FLSA must be raised within two years of a non-willful violation, or within three years of a willful violation.  *See Pineda v. Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (citing 29 U.S.C. § 255(a)).  When defendants are in default, the court may accept the plaintiff's allegation that their violation was willful.  *See Angamarca v. Pita Grill 7 Inc.*, No. 11-cv-7777 (JGK) (JLC), 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012) (accepting plaintiff's allegation of defendants' willful violation where defendants defaulted).  Claims brought pursuant to the NYLL must be raised within six years.  *See Pineda*, 831 F. Supp. 2d at 674 (citing NYLL § 663(1), (3)).

Although defendants may be simultaneously liable under both the FLSA and NYLL, plaintiffs may not recover damages under both the FLSA and NYLL for the same injury.  Where both the FLSA and NYLL apply to a plaintiff's claims, courts apply the statute that provides the greatest measure of damages.  *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-cv-8333 (PGG) (DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (applying NYLL's six-year statute of limitations because it provided the greatest measure of relief), *adopted by* 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498, 515-16 (S.D.N.Y. 2017) (same), *aff'd,* 752 F. App'x 33 (2d Cir. 2018)*; Hernandez v. Jrpac Inc.*, No. 14-cv-4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) ("Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA.  While the Court will formulate a separate damages award for each claim, as a matter of economic reality, for each plaintiff, the

NYLL award will be decisive.").

The Complaint was filed on November 16, 2018.  The earliest starting date of employment for any of the six Plaintiffs is November 2016.  (Am. Compl. ¶ 18.) Thus, all of the claims fall within the FLSA's three-year statute of limitation and the NYLL's six-year statute of limitations.  Plaintiffs are entitled to the same measure of relief regardless of whether the FLSA or NYLL is applied to Plaintiffs' unpaid overtime wage claims.

### 2.   Applicability of the FLSA and NYLL

To establish a claim under the FLSA, a plaintiff must demonstrate that:  (1) he or she was an "employee" of the defendants, as defined in the FLSA; (2) that the defendants engaged in commerce; and (3) that the employment relationship was not exempt by the FLSA.  *See Garcia v. Badyna*, No. 13-cv-4021 (RRM) (CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also* 29 U.S.C. §§ 206, 207, 213; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31-32 (E.D.N.Y. 2015).  The NYLL is, for the most part, coextensive with the FLSA differing only to the extent described below.

### a.   Definition of "Employer" Under the FLSA and NYLL and Joint and Several Liability

The FLSA provides a broad definition of what constitutes an employer-employee relationship and permits "[a]n employee . . . [to] simultaneously have multiple employers within the meaning of the [statute]."  *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 507 (S.D.N.Y. 2015); *see also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992); *Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132, 141 (2d Cir. 2008).

When determining whether an employer-employee relationship exists, courts apply a

flexible standard and consider the "'economic reality'" and "'totality of the circumstances'" surrounding the relationship.  *Inclan*, 95 F. Supp. 3d at 507 (quoting *Barfield*, 537 F.3d at 141–42).  When applying the "economic reality" test, courts consider four factors to determine whether a defendant is an employer under the FLSA, namely "whether the individual:  (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019) (internal quotation marks and citation omitted); *see also* 29 U.S.C. § 203(d) (the term "'employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee"); *Feng Chen v. Patel*, No. 16-cv-1130 (AT) (SDA), 2019 WL 2763836, at *5 (S.D.N.Y. July 2, 2019) (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67 (2d Cir. 2003)); *Garcia*, 2014 WL 4728287 at *5 (explaining that individuals are considered employers for purposes of the FLSA if they have "'operational control' over the employee in question" (quoting *Irizarry v. Catsimatidis,* 722 F.3d 99, 110 (2d Cir. 2013)).

A defendant may still be found to be an employer where one of these factors is not met, so long as the other factors are present.  *See Fermin*, 93 F. Supp. 3d at 36 (although individual defendants failed to maintain employment records, they were employers within the meaning of the FLSA and NYLL where they satisfied the other three factors); *see also Barfield*, 537 F.3d at 145; *Zheng*, 355 F.3d at 71.  Courts in this Circuit consistently interpret the definition of employer under the NYLL "'coextensively with the definition used by the FLSA,'" and, thus, also apply the economic reality test when determining whether a defendant is an employer under the NYLL.  *Williams*, 358 F. Supp. 3d at 305 (quoting *Inclan*, 95 F. Supp. 3d at 511).

7

Where plaintiffs raise claims against multiple corporate defendants, "courts will treat [those] corporate defendants as a single employer for liability purposes if the plaintiff shows the 'nominally separate entities are actually part of a single integrated enterprise.'" *Armata v. Unique Cleaning Servs., LLC*, No. 13-cv-3625 (DLI) (RER), 2015 WL 12645527, at *3 (E.D.N.Y. Aug. 27, 2015) (quoting *Clinton's Ditch Co-op Co., Inc. v. NLRB.*, 778 F.2d 132, 137 (2d Cir. 1985)). When determining whether multiple corporate defendants are a single employer for liability purposes, courts consider whether the corporate defendants have:  "'(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership.'"  *Id.* (quoting *Chen v. TYT East Corp.*, No. 10-cv-5288(PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)); *see also Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).  There is no requirement that every factor be present and no single factor is controlling. *See Chen*, 2012 WL 5871617 at *3 (citing *Lihli Fashions Corp., Inc. v. NLRB,* 80 F.3d 743, 747 (2d Cir. 1996)).  And, courts have found multiple corporate defendants to constitute a single employer where they were owned, maintained, and controlled by the same owners during the relevant timeframe and those individuals applied the "same pay policies, practices, and procedures to all hourly employees" during the relevant period.  *See Armata, LLC,* 2015 WL 12645527 at *4.

Here, Plaintiffs performed work for MCI, OKE and DPH, all under the supervision and control of individual defendants Marte and Olaya. Plaintiffs have asserted facts showing that Defendants Marte and Olaya had the power to hire and fire employees, supervised and controlled the work schedules, determined the rate and method of payment, and supervised and directed the manner of work to be performed by Plaintiffs.  Thus, they are liable as

"employers" as well.  *See Garcia*, 2014 WL 4728287 at *5 (finding individual defendant liable where plaintiff alleged defendant owned the restaurant where he worked and "had the power to hire and fire employees, set wages and schedules, and oversee the day-to-day").

### b.  Defendants' Engagement in Commerce

In the context of the FLSA, the term "'commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).  Under the FLSA, a business engages in commerce or produces goods for commerce where it:  "[H]as employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and [i]s an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)."  § 203 (s)(1)(A)(i)-(ii).  The NYLL is almost identical to the FLSA, but provides a more lenient standard because it does not require the plaintiff to demonstrate that his or her employer engages in interstate commerce or makes a minimum amount of annual sales.  *See Armata*, 2015 WL 12645527 at *3.

Here, Plaintiff has alleged that Defendants' qualifying business revenue is at least $500,000 and directly engaged in interstate commerce because the entities used goods, equipment, and materials from outside New York State.  (Am. Compl. ¶¶ 32-34; Pls. Affs. ¶ 8); *see also Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12-cv-6852 (RA) (HBP), 2015 WL 10353140, at *4 (S.D.N.Y. Oct. 23, 2015) (holding, following defendants' default, that grocery store engaged in interstate commerce), *adopted* 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016);

*Garcia*, 2014 WL 4728287 at *1 (finding defendant restaurant and restaurant owner in default and liable as employers under the FLSA where plaintiff cook alleged the restaurant grossed at least $500,000 per year and engaged in interstate commerce). Accordingly, Plaintiffs have met their burden of alleging that Defendants engaged in commerce under the FLSA and NYLL.

### c.   Exempt and Non-Exempt Employees

Although the FLSA and NYLL exempt certain employees from minimum wage and overtime wage protections, those exceptions most often apply to those "employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213; *see also Khurana v. JMP USA, Inc.*, No. 14-cv-4448 (SIL), 2017 WL 1251102, at *10 (E.D.N.Y. Apr. 5, 2017) (noting that "courts in the Second Circuit also look to the [Code of Federal] Regulations in determining whether an employee is exempt under the NYLL" (citing 12 New York Administrative Code ("NYCRR") § 142-2.2 and collecting cases)).  Here, Plaintiffs have alleged they all worked for Defendants as general laborers carrying out work such as demolition, carpentry, plumbing, and electrical work at residential buildings.  As such, Plaintiffs are not exempt employees under the FLSA or NYLL.  *See, e.g.*, *Romero v. Floris Construction, Inc.*, No. 16-cv-4282 (PKC) (RLM), 2016 WL 11523365, at *5 ("construction workers are non-exempt employees under the FLSA.").  Accordingly, Plaintiffs have sufficiently established they are non-exempt employees under the FLSA and NYLL.

### B.   Plaintiffs' Damages

Because the Court has already determined Defendants are in default and that Plaintiffs are all covered under the FLSA and NYLL, the Court must now assess damages.  Even in the event of default, Plaintiffs bear the burden to show entitlement to recovery.  *See Fermin*, 93 F.

Supp. 3d at 29 (collecting cases).  To meet this burden, Plaintiffs must show that the

compensation sought "relates 'to the damages that naturally flow from the injuries pleaded.'"

*Id*. (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir.

1992)).  Although it was not required to do so, this Court held an inquest hearing on July 22,

2020 on the issue of damages.  *See* F.R.C.P. 55(b); *Finkel*, 577 F.3d at 87 (explaining that courts

have discretion to decide whether to conduct an evidentiary hearing following default); *see also*

*Fermin*, 93 F. Supp. 3d at 29 (collecting cases).  Plaintiffs also submitted significant information

to substantiate their claim damages at the motion for default stage.  (*See* ECF No. 79.)  As such,

I respectfully recommend that Plaintiffs be awarded damages, as set forth below.

### 1.  Overtime Wages, and Spread of Hours Compensation

#### a.  Legal Standard

The FLSA and NYLL require employers to "compensate employees who work over forty

hours per week with overtime pay at the rate of one and one-half times the regular rate."

*Pineda*, 831 F. Supp. 2d at 673 (internal quotation marks omitted); *see also* 29 U.S.C.

§§ 207(a)(1); 12 NYCRR § 142-2.2.  "Even when wages exceed the minimum prescribed by

Congress, the parties to the contract must respect the statutory policy of requiring the

employer to pay one and one-half times the regular hourly rate for all hours actually worked in

excess of 40."  *Walling v. Helmerich & Payne*, 323 U.S. 37, 42 (1944); *see also Pineda*, 831 F.

Supp. 2d at 673-74.

Where, as here, the employers paid their employees a fixed daily salary, "the regular

hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary

designated by the number of hours which the salary is intended to compensate."  29 CFR

§ 778.113(a); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 380 (E.D.N.Y. 2012).  If the number of hours per week for which the employee was compensated is unknown, there is a rebuttable presumption that the fixed salary covers 40 hours.  *See De Jesus v. Empire Szechuan Noodle House Inc.*, No. 18-cv-1281 (JPO), 2019 WL 1789901, at *2 (S.D.N.Y. Apr. 24, 2019) (citing *Moon v. Kwon*, 248 F. Supp. 2d 201, 207–208 (S.D.N.Y. 2002)).

Plaintiffs bear the burden of showing they were not properly compensated for the overtime hours they worked.  *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003); *see also Pineda*, 831 F. Supp. 2d at 674.  In the context of a default and where Plaintiffs lack access to the employment records necessary to prove they were not properly compensated, Plaintiffs may "meet [their] burden of proof 'by relying on recollection alone.'"  *Elisama*, 2016 WL 11523365 at *4 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011)).  In this case, Plaintiffs have submitted proof by affidavit that they each worked 60 hours per week during their employment, meaning that they are entitled to overtime premiums for 20 hours each week of their employment.

### b.  Application

Plaintiffs provide breakdowns for each of the six Plaintiffs detailing: the employment period, daily rate, the calculated regular and overtime rates, overtime hours worked per week, weeks worked per year, and estimated actual damages hours. (Plaintiffs' Brief, ECF No. 78; *see also* Pls. Affs.)  For purposes of computing the overtime premium due, the Court first determines each Plaintiff's regular rate.  To do so, the appropriate daily amount is multiplied by the 6 days each Plaintiff worked per week.  That figure is then divided by the 60 hours each Plaintiff worked per week to produce the regular rate.   This computation reflects that Plaintiffs

received at least the minimum wage for all 60 hours they worked.  Accordingly, Plaintiffs seek and are entitled to the additional half-time rate they did not receive for the 20 hours of overtime worked each week..  The half-time rate is derived from dividing the regular rate by two.  Once the half rate has been determined for each Plaintiff, for each year they worked, the respective half rates are then multiplied by the 20 overtime hours per week each Plaintiff worked, to produce the annual unpaid overtime amounts.  Those annual amounts are then aggregated by Plaintiff to produce the total amount of unpaid overtime wages to which each Plaintiff is entitled.  While Plaintiffs did not explicitly calculate the regular and half time rates as weekly figures, the Court's computation set forth above results in the same total damages sought by Plaintiffs in their submission.

Accordingly, Plaintiffs are entitled to damages awards for unpaid overtime wages as follows:  $14,780 for Andy Verdin; $13,090 for Ignacio Reyes de los Santo; $10,560 for Amador Cantu de los Santos; $9,480 for Benito Cantu; $9,480 for Elvis Martinez; and $2,700 for Baltazar Reyes Librado.  (*See* ECF No. 78 at 16-18.)

### 2.  Entitlement to Liquidated Damages

Under both the FLSA and NYLL, plaintiffs who successfully bring FLSA or NYLL claims to recoup payments owed for unpaid overtime wages are eligible to recover liquidated damages equal to the total amount of their compensatory damages.  29 U.S.C. § 216(b); NYLL § 663(1); *see also Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016); *Zokirzoda*, 2020 WL 359908 at *6.

A plaintiff is typically entitled to a liquidated damages award under the FLSA or NYLL,

unless the defendants establish good faith as a defense.  29 U.S.C. § 216(b); NYLL § 663(1); *see also Chowdhury*, 666 F. App'x at 60; *Zokirzoda*, 2020 WL 359908 at *6.  "The employer's burden is 'a difficult one,' and 'double damages are the norm and single damages the exception.'" *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 316 (S.D.N.Y. 2011) (quoting *Barfield*, 537 F.3d at 150).  It is well settled that defendants in default cannot demonstrate good faith. *See Zokirzoda*, 2020 WL 359908 at *6.  However, as explained by the Second Circuit, a plaintiff may not recover liquidated damages under both the FLSA and the NYLL for the same claims. *See Chowdhury*, 666 F. App'x at 61 (establishing that plaintiffs cannot recover liquidated damages under both the FLSA and NYLL because the liquidated damages provisions of the FLSA and NYLL "are identical in all material respects, serve the same functions, and redress the same injuries"); *see also Zokirzoda*, 2020 WL 359908 at *6.

Here, where none of Plaintiffs' claims are time barred, the Court may award an equal amount of liquidated damages under either the NYLL's six-year statute of limitations period or FLSA's three-yes statute of limitations for willful violations.  Accordingly, the Court recommends an award of liquidated damages equal to 100% of each Plaintiff's recommended award for unpaid overtime wage damages.

### 3.  Entitlement to Pre-Judgment Interest

#### a.  Legal Standard

Under the FLSA, pre-judgment interest may not be awarded in addition to liquidated damages.  *See Fermin*, 93 F. Supp. 3d at 48.  New York, however, allows recovery for both, though the interest is computed based on actual, not liquidated, damages only.  NYLL § 198(1-a); *see also Zokirzoda*, 2020 WL 359908 at *6; *Andrade v. 168 First Ave Rest. Ltd.,* No. 14-cv-

8268 (JPO) (AJP), 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016), *adopted by* 2016 WL

3948101 (S.D.N.Y. July 19, 2016).  "The availability of both NYLL liquidated damages and pre-

judgment interest 'remains true even where liability is found not only under the NYLL but also

under the FLSA.'"  *Fermin*, 93 F. Supp. 3d at 48-49 (quoting *Begum v. Ariba Disc., Inc.*, No. 12-cv-

6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)); *see also Thomas v. iStar Fin., Inc.,*

652 F.3d 141, 150 n.7 (2d Cir. 2011).

The statutory pre-judgment interest rate in New York is nine percent per annum. CPLR

§ 5004.  Where damages subject to pre-judgment interest "were incurred at various times,

interest shall be computed upon each item from the date it was incurred or upon all of the

damages from a single reasonable intermediate date."  CPLR § 5001; *see also Castellanos v. Mid*

*Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-cv-3061, 2014 WL 2624759, at *5 (S.D.N.Y. June 10,

2014) (quoting N.Y. C.P.L.R. § 5001(b)).  Courts have "'wide discretion in determining a

reasonable date from which to award pre-judgment interest,' and interest is calculated using

the simple . . . [rather than] a compounded rate."  *Fermin*, 93 F. Supp. 3d at 49 (first quoting

*Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994); then citing *Gortat v. Capala Bros.,* 949 F.

Supp. 2d 374, 386 (E.D.N.Y. 2013)).  The intermediate date used is typically the midpoint of the

plaintiff's employment.  *See Zokirzoda,* 2020 WL 359908 at *6; *see also Zheng Ming Chen v. Y*

*Café Ave B Inc.*, No. 18-cv-4193 (JPO), 2019 WL 2324567, at *5 (S.D.N.Y. May 30, 2019).

### a.  Application

Here, each Plaintiff's employment must be looked at separately.  The approximate

midpoints Plaintiffs provide for each Plaintiff's employment are as follows:  October 25, 2017

for Verdin, December 10, 2017 for I.R. de los Santos; January 8, 2018 for A.C. de los Santos;

February 8, 2018 for both Martinez and Cantu; and August 10, 2018 for Librado.  (ECF No. 78 at

20-21.)  However, because Plaintiffs did not provide the Court with a calculation, and because

the most detailed temporal information regarding when each Plaintiff worked is weeks per

year, the Court is left to guess at the appropriate calculations for pre-judgment interest.  Be

that as it may, Defendants have defaulted, and Plaintiffs submissions and calculations have

shown to be accurate and trustworthy, I recommend adopting the midpoints for each Plaintiff

for purposes of computing pre-judgment interest to which each Plaintiff is entitled under New

York law.

### 4.  Federal Post-Judgment Interest

Plaintiff also seek federal post-judgment interest pursuant to 28 U.S.C. §1961.  The

statute provides that "[i]nterest shall be allowed on any money judgment in a civil case

recovered in a district court" and that "[s]uch interest shall be calculated from the date of the

entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury

yield, as published by the Board of Governors of the Federal Reserve System, for the calendar

week preceding . . . the date of the judgment."  28 U.S.C. § 1961.  As explained by the Second

Circuit, an award of post-judgment interest is mandatory.  *See Schipani v. McLeod*, 541 F.3d

158, 165 (2d Cir. 2008) ("we have consistently held that an award of postjudgment interest is

mandatory" (citing *Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 100 (2d Cir. 2004)); *see

also Xochimitl, Inc.*, 2016 WL 4704917 at *19 (awarding post-judgment interest in employment

action brought pursuant to the FLSA and NYLL).  Accordingly, Plaintiff is entitled to post-

judgment interest in an amount consistent with 28 U.S.C. §1961.

### 5.  Entitlement to Statutory Damages

### a.  Legal Standard

Plaintiff also seeks damages for violations of the notice wage notice and wage statements requirements established by the New York Wage Theft Prevention Act ("WTPA"), and NYLL § 195(1) and (3). (Am. Compl. ¶¶ 57-63.)  Because Defendants are in default, this Court accepts Plaintiffs' allegation that Defendants failed to provide them with the required notices as true. *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14-cv-10234 (JGK) (JLC), 2016 WL 4704917, at *14 (S.D.N.Y. Sept. 8, 2016) (awarding plaintiff statutory damages under NYLL § 195(1) and (3) where defendants defaulted), *adopted sub nom. by Xochimitl v. Pita Grill of Hell's Kitchen, Inc*, No. 14-cv-10234 (JGK), 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

NYLL § 195(1) requires New York employers to provide employees with a notice containing, among other things, their wage rate and frequency of pay at their time of hiring. Similarly, NYLL § 195(3) requires New York employers to provide employees with a statement containing, among other things, their regular and overtime rate of pay, the number of hours worked, and the time period covered by the payment with each payment of wages.  NYLL § 198 sets the amount of statutory damages an employee may recovery for violations of NYLL § 195.

When an employer fails to provide an employee with a wage notice within ten business days of the employee's first day of employment, as required by NYLL § 195(1), the employee is entitled to recover $50 for each work day the violation continues to occur.  NYLL § 198(1-b). The version of NYLL § 198(1-b) in effect at the time all Plaintiffs, which became effect on January 19, 2016, before the first Plaintiff commenced employment with Defendants, and in effect through today, limits the total amount of these statutory damages to $5,00, excluding reasonable attorneys' fees and costs, for violations of NYLL § 195(1).  Similarly, when an

employer fails to provide an appropriate wage statement, as required to NYLL § 195(3), the employee is entitled to recover $250 for each work day the violation continues to occur.  NYLL § 198(1-d).  The version of NYLL § 198(1-d) in effect limits this statutory penalty to $5,000 as well.

### b.  Application

Each Plaintiff worked at least 100 days for Defendants.  Each Plaintiff alleges, which is accepted as true by this Court given Plaintiff's default, that they never received appropriate wage notices or statements.  As such, each plaintiff is entitled to the maximum $5,000 award under NYLL § 198(1-b) and the maximum %5,000 award under NYLL § 198(1-d), for a total of $10,000 per Plaintiff in statutory damages.

### 6.  Attorneys' Fees

Plaintiffs who successfully brings claims pursuant to the FLSA and NYLL are entitled to recover reasonable attorneys' fees under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1); *see also Feng Chen*, 2019 WL 2763836 at *14; *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012).  Plaintiffs are represented by the firm Gangat LLC and work was performed by attorney Mohammed Gangat.  (*See* Gangat Decl., ECF No. 79; *see also* Billing Records, Ex. N to Gangat Decl., ECF No. 79-14.)  Plaintiffs seek an attorneys' fee award of $14,945.

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also*

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).  "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 190.  In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own knowledge of a firm's hourly rates.  *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)).  "Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases."  *Xochimitl*, 2016 WL 4704917 at *20 (finding a range of $250 to $450 per hour reasonable; collecting cases); *see also Lopez v. Emerald Staffing, Inc.*, No. 18-cv-2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour.").

In assessing whether the number of hours billed by the attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted).  Plaintiffs bear the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."  *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010) (citation omitted); s*ee also Fisher SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

District courts exercise "considerable discretion" in awarding attorneys' fees.  *See D.B. ex rel. S.B. v. New York City Dep't of Educ.*, No. 18-cv-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (internal quotation marks and citation omitted), *adopted by* 2019 WL

4565128 (S.D.N.Y. Sept. 20, 2019); *see also McDaniel v. Cty. of Schenectady*, 595 F.3d 411 (2d

Cir. 2010); *Arbor Hill*, 522 F.3d at 190. When awarding attorneys' fees, the court must "clearly

and concisely state reasons supporting the award." *Tackie v. Keff Enters. LLC*, No. 14-cv-2074

(JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (awarding attorneys' fees under the

FLSA and NYLL).

### a.  Reasonable Hourly Rate

Mohammed Gangat has been practicing law continuously in New York City since 2012,

and, for the past two years, has been a solo practitioner focused on employment matters.

(Gangat Decl. ¶ 15.)  He is a 2009 graduate of Georgetown Law School  (*Id.*)  He seeks a rate of

$350 per hour.  (Billing Records, ECF No. 79-14.)  This rate is squarely within the range of what

courts in this district have deemed reasonable for experienced litigators in wage-and-hour

cases.  *See, e.g., Lopez*, 2020 WL 915821 at *13; *Xochimitl*, 2016 WL 4704917 at *20.

### b.  Reasonable Hours Expended

The billing records submitted to the Court indicate that Mr. Gangat 42.7 hours working

on this case.  Nobody else is listed as working on this case, per Mr. Gangat's solo practice.

When assessing whether the hours worked were reasonable, courts consider whether "'at the

time the work was performed, a reasonable attorney would have engaged in similar time

expenditures.'"  *Williams*, 2018 WL 3370678 at *2 (quoting *Samms v. Abrams*, 198 F. Supp. 3d

311, 322 (S.D.N.Y. 2016)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).  "Hours

that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing

with such surplusage, the court has discretion simply to deduct a reasonable percentage of the

number of hours claimed as a practical means of trimming fat from a fee application."  *Kirsch v.*

*Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *see also Williams*, 2018 WL 3370678 at *2.  Courts also consider the nature of the legal matter, reason for the fee award, whether the case involved complex issues "requiring particular attorney skills and experience [,which] may command higher attorney rates," and whether the case "require[ed] retention of a firm with the resources needed to prosecute a case effectively."  *Williams*, 2018 WL 3370678 at *3 (citing *Arbor Hill*, 522 F.3d at 185-87).

Plaintiff has provided contemporaneous billing records which detail the hours expended and dates and descriptions of the tasks performed. (*See* Billing Records, ECF No. 79-14.) Plaintiffs seeks reimbursement for the time Mr. Gangat spent on this case, including time spent meeting and interviewing the clients, working on the Amended Complaint and related service issues, and writing letter and motions to the court involving Defendants' default and other matters.

The billing records show that reasonable tasks were completed within a reasonable amount of time. Accordingly, Plaintiff should be granted an award of attorney's fees as requested, totaling $14,945.

### 7. Costs

Both the FLSA and NYLL entitle prevailing plaintiffs in wage-and-hour actions to recover costs.  29 U.S.C. §216(b); NYLL §663(1).  "An award of costs 'normally include[s] those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'"  *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia*, 2020 WL 1130765 at *13.

Here, Plaintiff seeks to recover only the $400 in costs consisting entirely of the filing fee to initiate this case.  This is an expense typically reimbursed under the FLSA's and NYLL's costs provisions.  *See Xochimitl*, 2016 WL 4704917 at *22 (awarding costs for filing and process server costs).  However, Plaintiff has not submitted documentation showing the amounts paid for the filing fee or process server.  But, courts may take judicial notice of the filing fee if it is noted on the docket.  *See Sanchez v. Jyp Foods Inc.*, No. 16-cv-4472 (JLC), 2018 WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (where plaintiff sought costs under the FLSA and NYLL, court took judicial notice of the filing fee and denied all other requests for costs because they were unsupported by invoices or receipts).

Because the $400 filing fee is noted on the docket, the Court may take judicial notice of that cost.  (ECF No. 1.)  Accordingly, I recommend awarding Plaintiffs costs in the amount of $400 for the filing fee.

## **CONCLUSION**

For the reasons set forth above, I recommend that Defendants be held jointly and severally liable to Plaintiffs.  I recommend that each individual Plaintiff be entitled to the following amount, which is comprised of unpaid overtime wages, liquidated damages, and statutory damages:  $39,740 for Andy Verdin, $36,180 for I.R. de los Santos, $31,120 for A.C. de los Santos, $28,960 for Benito Cantu, $28,960 for Elvis Martinez, and $15,400 for Baltazar Reyes Librado.  Additionally, each Plaintiff is entitled to pre- and post-judgment interest consistent with the above, which will be calculated by the Clerk of Court in the event this Report is adopted.  Finally, I recommend awarding Plaintiffs the requested amount of attorneys' fees and costs, totaling $15,345.

22

Plaintiffs are directed to serve a copy of this Report and Recommendation on Defendants and file proof of service of the same on the docket by no later than December 4, 2020.

Dated:  November 24, 2020
     New York, New York

Respectfully Submitted,

_____
KATHARINE H. PARKER
United States Magistrate Judge

**NOTICE**

      **Plaintiffs shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.  *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)).  Defendants shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.**

      **If Plaintiffs files written objections to this Report and Recommendation, Defendants may respond to Plaintiffs' objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Defendants file written objections, Plaintiffs may respond to such objections within fourteen days after being served with a copy.  Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Engelmayer at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer.  The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**